Argued July 14, affirmed October 25, 1967, petition for
rehearing denied January 24, 1968

# GAMBLE, *Appellant, v.* STATE TAX COMMISSION, *Respondent.*

432 P. 2d 805
436 P. 2d 558

*Morris. J. Galen,* Portland, argued the cause for appellant. With him on the briefs were Tonkon & Galen, Portland.

*Walter J. Apley,* Assistant Attorney General, Salem, argued the cause for respondent. With him on the brief was Robert Y. Thornton, Attorney General, Salem.

Before PERRY, Chief Justice, and SLOAN, GOODWIN, DENECKE and LUSK, Justices.

DENECKE, J.

Plaintiff brought this refund suit for state income taxes paid and appeals from an adverse decision of the Oregon Tax Court. 2 OTR 459.

Plaintiff and Ted Gamble were husband and wife. In 1960 they paid $475,000 federal income taxes, the amount shown as due on their joint return for the year 1959. Two hundred forty thousand dollars was paid on income attributable to Mr. Gamble and $235,000 on income attributable to Mrs. Gamble. Mr. Gamble subsequently died in 1960. Plaintiff as surviving wife, filed a joint Oregon income tax return for the year

1960. No one disputes her right to do so. She reported the $475,000 federal income tax paid as a deduction. Federal income tax payments are allowable deductions. This exceeded the income reported on the 1960 state return and, therefore, resulted in a loss.

. Plaintiff contends that on her subsequent individual state returns she can take this full loss, as shown on the joint return, as a loss carryover deduction.

ORS 316.353 provides for the use of a net loss as a deduction in any of the five succeeding years. "Net loss" is defined as "the total of the deductions allowed by this chapter in arriving at adjusted gross income * * * reduced by the gross income * * *." ORS 316.353(2). The deductions allowed in arriving at adjusted gross income are stated in ORS 316.015. These are what are loosely termed "business expenses" as well as some "nonbusiness" deductions, such as federal income taxes paid.

■ A loss carryover is allowed "to overcome the sometimes harsh effect of taxing income strictly on an annual basis." *Calvin v. United States,* 354 F2d 202, 204 (10th Cir 1965).

The federal tax laws permit a loss carryover of the "net operating loss." There are no decisions concerning federal loss carryovers which are squarely applicable; however, both the Commission and the Tax Court believe certain decisions concerning the federal laws are closely analogous. The plaintiff, however, contends such decisions are completely inapplicable. She partly relies upon two United States Supreme Court cases as generally fixing the character of the joint return. These are *Taft v. Helvering,* 311 US 195, 61 S Ct 244, 85 L ed 122 (1940); *Helvering v. Janney,* 311 US 189, 61 S Ct 241, 85 L ed 118 (1940).

In the first case the law limiting charitable contributions to not more than 15 per cent of net income was involved. On a joint return the wife had claimed more than 15 per cent of her net income as a charitable deduction; however, the total charitable deduction taken by both the husband and wife was less than 15 per cent of the total net income of both husband and wife.

The court held the total net income of both spouses should be used in determining whether the 15 per cent limitation was exceeded:

"* * * The principle that the joint return is to be treated as a return of a 'taxable unit' and as though it were made by a 'single individual' would be violated if in making a joint return each spouse were compelled to calculate his or her charitable contributions as if he or she were making a separate return. The principle of a joint return permitted aggregation of income and deductions and thus overrode the limitations incident to separate returns. * * *" *Taft v. Helvering,* 311 US at 198.

In *Helvering v. Janney,* supra, the wife realized gains from the sale of capital assets, while the husband suffered losses from the sale of capital assets. The court held that in a joint return the husband's losses could be offset against the wife's gains:

"We are of the opinion that under the provision of the Act of 1934 as to joint returns of husband and wife, which embodied a policy set forth in substantially the same terms for many years, Congress intended to provide for a tax on the aggregate net income and that the losses of one spouse might be deducted from the gains of the other; and that this applied as well to deductions for capital losses as to other deductions. * * *" *Helvering v. Janney,* 311 US at 194-195.

■ We agree with the rationale of these decisions that a joint return is to be treated as the return of a "taxable unit" and as though it were made by a "single individual." As long as this "taxable unit," husband and wife, through a joint return, remains intact through all the crucial incidents, the principle of *Taft v. Helvering,* supra, and *Helvering v. Janney,* supra, appears applicable to both federal and state taxes. The perplexing problem occurs when that "taxable unit" is nonexistent at the time of a crucial incident such as at the time of the loss or during the taxable period for which the return is filed and the loss is to be used to offset income:

> "No difficulty is encountered where a husband and wife each consistently files separate returns or both consistently file joint returns for the year in which there is a net operating loss and for the entire period in which the loss may be carried back and carried forward. *If joint returns are filed under the circumstances referred to, the spouses are treated as an entity for the loss year and for the entire carry-back and carry-over period, and no analysis is made of the joint returns to determine to whom gross income and deductions are attributable. Such an analysis must be made, however, if in any of the aforementioned years the husband and wife either file separate returns where previously joint returns had been filed, or file joint returns where previously separate returns had been filed.* \* \* \*"* (Emphasis added.) 5 Mertens, Law of Federal Income Taxation, § 29.12, 128-129.

The principal case relied upon by the Commission is *Calvin v. United States,* supra (354 F2d 202). There, the parties were married in 1959. The wife had incurred business losses in 1954 through 1957 which were "net operating losses." She had not used the entire amount of her loss on her separate 1958 return. For

1959 she and her husband eventually filed a joint return in which the wife's loss carryover was offset against her husband's income.

. The court held this could not be done. The court stated: "The authorities seem to generally agree that in the absence of express statutory language, only the taxpayer who sustained the loss is entitled to take the deduction." 354 F2d at 204. That statement is not literally correct because, as *Helvering v. Janney,* supra, held, when the "taxable unit" of a husband and wife through a joint return continues through all the crucial incidents, one taxpayer, one spouse, can effectively take the deduction of another taxpayer, the other spouse. This is because the joint return is regarded as the return of a single individual.

After briefs were filed *Zeeman v. United States,* 275 Fed Supp 235, 67-2 USTC Adv Sh, CCH 84, 808 (DC SD NY 1967), interpreting the federal tax laws generally in accordance with *Calvin v. United States,* supra (354 F2d 202), was reported. There, the plaintiff wife sought to carry back her 1963 loss, as shown on her separate return, against her late husband's income for 1960, 1961 and 1962, during which years joint returns had been filed. The court declined to approve and stated:

"\* .\* \* The cases allowing one spouse's deductions to. be subtracted from the other's income \* \* \* deal with situations wherein the deduction accrued and the income was received during a period for which a joint return was or could have been filed, usually a single year. \* \* \*" CCH 84,821.

The court stated the reason for the loss carry forward and backward provisions to be, as was stated in *Calvin v. United States,* supra, i.e., " 'to ameliorate

the unduly drastic consequences of taxing income strictly on an annual basis.'" The court then observed:

"* * * Such a design contemplates some form of economic continuity between the person who receives the carryback refund and the person against whose income the loss is carried back. Such continuity does not necessarily exist between the aggregate person, the 'taxable unit' formed by a married couple under Section 6013, *Taft v. Helvering, supra* at 198, and an individual surviving spouse." CCH 84,821.

The court concluded:

"For these reasons this court adheres to the rule that a taxpayer may deduct a net operating loss from the income of his or her spouse reported on a joint return, only when a joint return can also be filed at the time the loss is suffered. * * *" CCH 84,822.

Neither *Calvin v. United States, supra* (354 F2d 202), nor *Zeeman v. United States, supra* (CCH 84,808), is completely like the present case; however, the thrust of those decisions is very relevant. We regard those decisions to interpret the federal tax laws as requiring the existence of the "taxable unit," husband and wife, capable of filing a joint return at all crucial times, the time when the loss was incurred, as well as the time when the carried over or carried back loss is to be off-set against income.

The Commission asserts that the federal "net operating loss" carryover laws are similar to Oregon laws on the subject and, therefore, we should follow the decisions interpreting the federal law. *Ruth Realty Co. v. Tax Commission,* 222 Or 290, 353 P2d 524 (1960). Mrs. Gamble contends that the federal "net operating loss" is not similar to the Oregon "net loss" inasmuch

as the federal loss is determined by deducting only business deductions, with one exception, whereas in computing the loss in Oregon several nonbusiness deductions, such as federal income tax payments, are allowed.

■ We have followed the principle that if there appear to be no significant differences between federal tax law and Oregon tax law, we will accord the decisions interpreting the federal laws weighty consideration. *Ruth Realty Co. v. Tax Commission,* supra. In *Schmitt v. State Tax Com.,* 234 Or 455, 383 P2d 97 (1963), the question was whether a charitable gift made to a trustee was deductible. The federal statute made deductible gifts to charities "or for the use of" charities; the Oregon statute omitted that phrase. We found that this was a significant difference and hence the federal decisions were not applicable.

■ We do not find Oregon's "net loss" to be significantly different than the federal "net operating loss." As we stated, Oregon's "net loss" can be reached by making allowable business deductions, as well as nonbusiness deductions. Plaintiff suggests that perhaps the federal decisions are applicable to a "net loss" brought about by business deductions, but are not applicable if the loss results from nonbusiness deductions, such as the payment of federal income taxes. Such a distinction does not seem practical and there is nothing in the statutory language or history which suggests the legislature had such in mind.

Nonbusiness losses from casualties are allowable as deductions in computing "net operating loss" for federal tax purposes. This is only important as evidence that Congress did not intend "net operating loss" to be strictly a loss resulting from business expense deductions. From their nature federal tax payments

cannot be an allowable deduction for federal tax purposes.

Plaintiff also urges that because of the wording of Oregon statutes, such laws do not limit losses that can be carried over to losses "by the taxpayer."

As previously stated, the legislature defined "net loss" as the total deductions used in computing adjusted gross income, reduced by gross income. ORS 316.353(2).

ORS 316.015 provides:

"The term 'adjusted gross income' means the gross income minus:

"(1) The deductions allowed by ORS 316.305 to 316.360 which:

"(a) Are attributable to a trade or business carried on *by the taxpayer* * * *.

"(b) Consist of expenses of travel, meals and lodging, paid or incurred by the taxpayer * * *.

"* * * * * *

"(d) Are attributable to property held for the production of rents or royalties.

"(e) Consist of federal income taxes paid or accrued during the tax year." (Emphasis added.)

The plaintiff's argument is that because the first sections provide that deductions are allowed from a business carried on "by the taxpayer" or expenses paid "by the taxpayer," the absence of the phrase, "by the taxpayer," in (e), the deduction for federal income taxes, is proof that the legislature did not intend to limit the inclusion of taxes paid by the taxpayer; that taxes paid by the other spouse, or by the spouses jointly, could be used as a deduction.

The manner in which this statute refers back to a whole series of statutes enumerating deductions al-

lowed in computing net income (ORS 316.305 to 316.360) could explain why "by the taxpayer" is used in some sections and why it is not used in others. Furthermore, the adjusted gross income statute adopts certain of the net income deductions, including federal tax payments, and the net income deduction statute, ORS 316.315, allows as deductions only "taxes paid during the tax year *by the taxpayer* \* \* \*." (Emphasis added.)

■ The taxpayer also believes it is significant that the Oregon loss carryover statute originally had the phrase, "by the taxpayer," and such phrase was deleted when it was amended. Oregon Laws 1957 (Special Session), ch 15, § 6, p 30, read:

"(4) A net loss in any tax year shall be allowed as a deduction in each of the five succeeding tax years to the extent that such net loss exceeds the net income *of the taxpayer* \* \* \*; but the net loss deduction shall be reduced by the amount of the deductions, claimed *by the taxpayer* \* \* \*." (Emphasis added.)

That statute is now ORS 316.353, which provides:

"(4)(a) The net loss in any tax year shall be allowed as a deduction \* \* \*.
"(b) The amount of the net loss deductible in any tax year shall be the net loss of a prior year reduced by the net income (computed without the net loss deduction) \* \* \*."

Except possibly in the rare situation, such as here present, the phrases, "of the taxpayer" or "by the taxpayer," are superfluous. Except in joint returns, the taxpayer pays a tax only on the taxpayer's income and the taxpayer deducts only the taxpayer's losses. There is nothing in the legislative history of this section that in any way indicates that the omis-

sion of the phrase, "of the taxpayer," was to permit one taxpayer to deduct another taxpayer's losses. The statement in *United States National Bank of Oregon v. Straub*, 246 Or 61, 64, 423 P2d 949, 951 (1967), is applicable: "* * * [I]t would seem more reasonable to explain the deletion of the term * * * as an effort upon the part of a good draftsman to eliminate a redundancy from the statutes."

■ Under both federal and state law the existence and continuation of the husband and wife single taxable unit, as exhibited by the joint return, is essential to claiming and retaining the benefits of a joint return. The $475,000 loss was a loss of the taxable unit, Mr. and Mrs. Gamble. When Mr. Gamble died the taxable unit of Mr. and Mrs. Gamble could no longer exist after 1960. Mrs. Gamble had to file an individual return and because the taxable unit was necessarily severed, she was relegated to her individual loss.

We believe it is immaterial that Mrs. Gamble, like any other spouse making a joint return, is individually liable for the entire tax due. Accord, *Zeeman v. United States*, supra (CCH 84,808).

It is true that as a result of our decision the net loss shown on the 1960 joint return attributable to Mr. Gamble will not be fully used. This, however, would also have occurred if it had been found advantageous to file separate returns for Mr. Gamble for the years 1959 and 1960. Also, it must be remembered that because of Mr. Gamble's death he, as well as the former taxable unit of Mr. and Mrs. Gamble, had no subsequent income against which to apply the loss.

Plaintiff urges that if we refuse to permit Mrs. Gamble to use the entire loss as shown on the joint return of 1960 we should permit her to use the entire

loss attributable to the federal tax paid on her income alone to offset her income for years subsequent to 1960.

We doubt if that issue is raised by the pleadings or the stipulation of facts entered into by the parties. It was not raised in the Tax Court. In addition, the record before us is insufficient to enable us to pass upon this contention, and on the basis of the fragmented record, plaintiff's contention is not well taken.

This contention is based upon her assertions that Mr. Gamble's "deduction was used to offset the entire income reported on the joint return," and "plaintiff did not use any part of her 1960 federal tax deduction as a deduction on the joint 1960 state return." The joint 1960 state return is not in evidence; however, the exhibits attached to plaintiff's complaint and other statements made in her brief state that on the 1960 return a net loss of $273,000 was reported. This indicates that both Mr. and Mrs. Gamble's federal tax payments were used as deductions; otherwise, the reported loss could not have been this large. Similarly, stipulation of fact III is that in 1960 Mr. and Mrs. Gamble deducted $475,000, the total income taxes paid by them, from their 1960 income.

Affirmed.

**ON PETITION FOR REHEARING**

Tonkon & Galen and Morris J. Galen, Portland, filed briefs in support of the petition.

Robert Y. Thornton, Attorney General, Walter J. Apley and G. F. Bartz, Assistant Attorneys General, Salem, contra.

Before PERRY, Chief Justice, and McALLISTER, SLOAN, O'CONNELL, GOODWIN, DENECKE, HOLMAN and LUSK, Justices.

DENECKE, J.

The plaintiff petitioned for rehearing contending that the decision of this court rejecting the alternative argument raised by the taxpayer was in error and was based upon this court's incorrect assessment of the record upon appeal. Plaintiff's alternative argument

was that in the event she was held not entitled to use the entire loss shown on the 1960 return as a loss carryover, she was at least entitled to use her personal 1960 federal tax deduction as a loss carryover.

In our initial opinion we stated: "This [statements in the exhibits and plaintiff's briefs] indicates that both Mr. and Mrs. Gamble's federal tax payments were used as deductions; * * *." Plaintiff contends that this statement is in error. We believe that it may create a misleading inference.

Mr. Gamble's tax payment of $240,000 and Mrs. Gamble's tax payment of $235,000 were both listed as deductions on the 1960 return and were subtracted from income and together exceeded the 1960 joint income by $260,000, generating a loss carryover of that amount. The record does not indicate, and we doubt whether the 1960 return (if it were in the record, which it is not) would indicate, whether Mr. Gamble's or Mrs. Gamble's tax deduction was used to offset 1960 income or was unused and composed all or part of the loss carryover to be used to offset subsequent income.

Even if the 1960 return were in evidence and it stated that only Mr. Gamble's tax payment had been used as a deduction against 1960 income, the plaintiff's position is contrary to the principal portion of our main decision, i.e., "the existence and continuation of the husband and wife single taxable unit, as exhibited by the joint return, is essential to claiming and retaining the benefits of a joint return."

Plaintiff argues that our decision denying the wife the opportunity to use her husband's tax deduction as a deduction on their joint return and her tax deduction as a deduction against her subsequent individual income is contrary to the cases we cited: *Taft v.*

*Helvering,* 311 US 195, 61 S Ct 244, 85 L ed 122 (1940), and *Helvering v. Janney,* 311 US 189, 61 S Ct 241, 85 L ed 118 (1940). We disagree.

Those decisions "permitted aggregation of income and deductions" on joint returns and did not require each spouse to deduct his or her personal deductions from his or her personal income. *Taft v. Helvering,* supra (311 US at 198). Plaintiff does not desire to aggregate deductions; plaintiff desires to segregate deductions and use her husband's deduction in a joint return of joint income and to preserve her deduction for subsequent use in a separate return for her income. This would be violative of our initial decision on the principal issue in this case.

Petition denied.